A94A0451. COPELAND v. THE STATE.
(443 SE2d 869)

BEASLEY, Presiding Judge.
Appellant was convicted of one count of possession of cocaine, OCGA § 16-13-30, and one count of misdemeanor obstruction of a law enforcement officer, OCGA § 16-10-24. He appeals, complaining of the denials of his motion to suppress, his motion for a directed verdict on the count of misdemeanor obstruction, and his motion for new trial.

Appellant was observed by Officer Tibbs "walking very close to-

gether" with a "suspected drug dealer" in an area known for illegal drug use. Officer Tibbs asked appellant and this other person to speak with him; the latter complied while appellant walked away. Officer Tibbs proceeded to talk to the suspected drug dealer and sent a message over his radio that he wished the appellant stopped by another officer.

While Officer Tibbs questioned and performed a pat-down search of the suspected drug dealer (without finding anything incriminating), Officer Shadeck stopped the appellant. Officer Shadeck asked the appellant for identification, received it, ran a "wants and warrants" check on him, and allowed the appellant to continue on his way. Officer Shadeck reported this to Officer Tibbs over his radio and Officer Tibbs stated that he still wished to speak with appellant himself.

The two officers then asked the appellant to stop and he did so. Officer Tibbs asked appellant whether he was on parole and the appellant responded that he was. Officer Tibbs asked if appellant was carrying a weapon. The appellant said "Oh, damn," or something similar, and ran. The officers gave chase, observed appellant discard items that later proved to be cocaine, caught appellant, and after a brief struggle, subdued him.

1. Appellant's motion to suppress and his motion for new trial were both predicated on the contention that evidence of drugs in his possession should be suppressed as the fruits of an unlawful stop and seizure. The State contends that the three encounters between the appellant and the police officers were noncoercive communications that did not rise to the level of a seizure.

" 'Supreme Court holdings sculpt out, at least theoretically, three tiers of police-citizen encounters: (1) communication between police and citizens involving no coercion or detention and therefore without the compass of the Fourth Amendment, (2) brief seizures that must be supported by reasonable suspicion, and (3) full-scale arrests that must be supported by probable cause. . . . ' . . . [Cit.]" *In the Interest of S. B.*, 207 Ga. App. 60, 61 (427 SE2d 52) (1993).

" ' "(A) person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave. Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled. (Cits.) In the absence of some such evidence, otherwise inoffensive contact between a member of the public and the police cannot, as a matter of law, amount to a seizure of that person. . . . " [Cit.]' [Cit.]" *State v. Jackson*, 201 Ga.

App. 810, 814 (2) (412 SE2d 593) (1991). "It is clear . . . that merely approaching an individual and requesting that he give his consent for a search does *not* constitute a seizure and need *not* be supported by an articulable suspicion. '(E)ven when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual, (cits.); ask to examine the individual's identification, (cits.); and request consent to search . . . , (cit.) — as long as the police do not convey a message that compliance with their requests is required.' [Cit.]" (Emphasis in original.) *State v. Westmoreland*, 204 Ga. App. 312 (1) (418 SE2d 822) (1992).

In this case, the officers generally asked questions of the appellant. He was not under any police compulsion to remain and answer the officers' questions. The officers were in uniform, but did not reach for the appellant or have their hands near their weapons. They did not arrest appellant prior to his flight and capture. All evidence presented shows that the officers "employed no physical force or show of authority to restrain [appellant's] freedom of movement." *In the Interest of S. B.*, supra at 61-62; see *State v. Davis*, 206 Ga. App. 238, 239 (424 SE2d 878) (1992). Each of the three encounters was a brief communication between the officers and appellant that did not rise to a seizure. *Westmoreland*, supra.

The officers were lawfully in the presence of the appellant and in communication with him when he fled in response to the question concerning a weapon. "Flight in connection with other circumstances may be sufficient probable cause to uphold a warrantless arrest or search ([cit.]). . . ." *State v. Smalls*, 203 Ga. App. 283, 286 (2) (416 SE2d 531) (1992). Appellant Copeland had been observed in an area known for a high level of illegal drug use, had been walking in a suspicious manner with a suspected drug dealer, had walked away from a police officer when the officer attempted to question him, had admitted he was on parole, had voiced despair and run when asked if he had a weapon, and had pulled objects from his pockets and discarded them. Under these circumstances, the officers had probable cause to believe that appellant was committing a crime.

Contrary to appellant's claim, his flight was not "provoked" by the officers' questions; this was not a case in which the officers "refused to take 'no' for an answer." Compare *Jamison v. State*, 262 Ga. 40 (414 SE2d 466) (1992). On the contrary, the evidence suggests that appellant's actions were consensual.

There was no error in denying the motion to suppress or in refusing to grant a new trial on the same grounds.

2. Appellant contends that his motion for a directed verdict as to the charge of misdemeanor obstruction should have been granted, on the theory that a violation of OCGA § 16-10-24 (a) can only occur if the officer involved is "in the lawful discharge of his official duties."

As determined above, the officers were acting lawfully. This enumeration is without merit. Compare *Brooks v. State*, 206 Ga. App. 485, 488-489 (2) (425 SE2d 911) (1992).

Judgment affirmed. *Andrews and Johnson, JJ., concur.*

DECIDED APRIL 18, 1994.

*David C. Butler*, for appellant.

*Thomas J. Charron*, District Attorney, *Debra H. Bernes, Nancy I. Jordan*, Assistant District Attorneys, for appellee.