**THIRD DIVISION
ELLINGTON, P. J.,
ANDREWS and RICKMAN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**May 10, 2017**

# In the Court of Appeals of Georgia

A17A1059. DARDEN v. THE STATE.

ANDREWS, Judge.

The State charged Tamichael Darden with sale of cocaine and possession of cocaine with intent to distribute. Following a trial, the jury found him guilty of the lesser included offense of possession, resulting in his conviction on that offense. Darden appeals, and for reasons that follow, we affirm.

Viewed favorably to the jury's verdict, *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979), the evidence shows that on December 12, 2013, undercover narcotics officers with the Athens-Clarke County Police Department saw Darden enter a local billiards hall. One of the officers, William Parker, was familiar with Darden and his vehicle from past encounters and prior surveillance activity. Parker and his partner continued to observe the area from their unmarked SUV,

noting the arrival of a disheveled individual that Parker thought was "somebody, at that point, to watch." The individual, who was later identified as William Watson, went into the billiards hall, then exited a few minutes later, followed closely by Darden.

The two men got into Darden's vehicle, and Parker could see Darden maneuvering "objects in [his] lap." Believing that they were witnessing a drug transaction, the officers approached Darden's vehicle in their unmarked SUV, "pull[ing] at an angle to the rear of Mr. Darden's vehicle." Watson got out of the car, and Parker walked towards him, identifying himself as a police officer and asking whether they could speak. Watson immediately "slump[ed] his body," and Parker inquired whether he had just purchased drugs. Indicating that he had bought $40 worth of crack cocaine from Darden, Watson handed Parker a piece of cocaine.

Parker detained Watson and signaled to his partner that he should detain Darden. The officers subsequently searched Darden's car, discovering additional cocaine, $40 in cash, a digital scale, and razor blades. The officers also recovered $822 in cash from Darden's person.

At trial, Watson testified for the defense, asserting that he had met with Darden to repay a debt, not to purchase cocaine. According to Watson, he only stated that

2

Darden had sold him cocaine because the officers told him they would let him go if he implicated Darden.

Based on the evidence presented, the jury found Darden not guilty of selling or intending to distribute cocaine, but guilty of possessing the cocaine found in the car. Darden now challenges his possession conviction, asserting that he received ineffective assistance of counsel at trial. To prevail on this claim, Darden must show "both that his counsel's performance was deficient and that his defense was prejudiced to the extent that, but for that deficient performance, a reasonable probability exists that the outcome of the trial would have been different." *Ross v. State*, 313 Ga. App. 695, 696 (1) (722 SE2d 411) (2012). As discussed below, Darden has not met his burden of proof.

1. Darden argues that defense counsel deficiently failed to move to suppress the evidence seized by the officers after they improperly detained him without reasonable suspicion. We disagree.

Our case law establishes three tiers of police-citizen encounters: (1) communications involving no coercion or detention, which fall outside of the Fourth Amendment; (2) brief seizures that must be supported by reasonable suspicion of criminal activity; and (3) full-scale arrests that require probable cause. See *Minor v.*

3

*State*, 298 Ga. App. 391, 394 (1) (a) (680 SE2d 459) (2009). During a first-tier encounter, police officers

> may approach citizens, ask for identification, ask for consent to search, and otherwise freely question the citizen without any basis or belief of criminal activity so long as the police do not detain the citizen or convey the message that the citizen may not leave.

Id. (punctuation omitted).

Darden claims that the officers' initial approach of his vehicle was a second-tier encounter requiring reasonable suspicion of criminal activity. To support this claim, Darden testified at the hearing on his motion for new trial that the officers parked their unmarked SUV "[d]irectly behind" his car, blocking him in and preventing him from leaving the parking lot. A photograph admitted at trial that "accurately depict[ed] the way [Darden's] car looked" when the officers approached, however, does not show an SUV directly behind it. And when the officers pulled into the parking lot, Darden was sitting in his parked vehicle; there is no evidence that the vehicle was running or that he was attempting to leave the area.

"It is well established that an officer's approach to a stopped vehicle and inquiry as to what is going on do not constitute a 'stop' or 'seizure' and clearly falls within the realm of the first type of police-citizen encounter." *In the Interest of A. A.*,

4

265 Ga. App. 369, 371 (1) (593 SE2d 891) (2004). The officers in this case approached an already-stopped vehicle in their unmarked SUV and encountered the occupants. Although Darden asserted at the new trial hearing that the officers prevented him from leaving the parking lot, the trial court was authorized to disbelieve this testimony in denying his motion for new trial. See *Crankshaw v. State*, 336 Ga. App. 700, 702 (3) (a) (786 SE2d 245) (2016) (trial court determines witness credibility at hearing on motion for new trial).

Simply put, "no 'stop' occurred within the meaning of the Fourth Amendment" when the officers initially approached Darden's car. Id. The approach was a first-tier police-citizen encounter that did not require reasonable suspicion. See *Minor*, supra at 394 (first-tier encounter occurred when officer parked patrol car behind vehicle in driveway; although vehicle was occupied and "about to leave," it was not moving as the officer made contact, and there was no evidence that the officer activated her patrol car's blue lights); *In the Interest of A. A.*, supra (where officer pulled into driveway behind occupied vehicle that had already stopped, the fact that "the officer's car was blocking or partially blocking the driveway [was] immaterial"). Compare *Jones v. State*, 291 Ga. 35, 38 (1) (727 SE2d 456) (2012) (seizure occurred when officer activated patrol car's flashing lights and blocked defendant's truck as it tried

5

to exit parking lot). And once Watson stated that he had purchased cocaine from Darden, the officers were authorized to detain the two men for further investigation. See *White v. State*, 267 Ga. App. 200, 202 (2) (598 SE2d 904) (2004) (first-tier encounter properly escalated into second-tier stop after defendant told officer that he was in possession of marijuana).

"When trial counsel's failure to file a motion to suppress is the basis for a claim of ineffective assistance, the defendant must make a strong showing that the damaging evidence would have been suppressed had counsel made the motion." *Ross*, supra (punctuation omitted). Darden has not made the required showing here. Accordingly, "his ineffectiveness claim must fail." Id. at 697.

2. Darden also argues that trial counsel deficiently opened the door to testimony regarding his refusal to speak with police. At trial, counsel asked Parker whether Darden had cooperated when the officers approached his vehicle. Parker agreed that Darden had not resisted the officers or fled, and he initially gave them an explanation for the cash found on his person. After establishing that Parker had questioned Darden further that day, counsel asked: "[D]id he cooperate and answer your questions or did he refuse to cooperate?" Parker responded: "[H]e did not wish to speak with us."

6

According to Darden, defense counsel invited Parker to comment on his right to remain silent. Even if counsel's performance was deficient in this regard, however, we find no reasonable probability that such deficiency impacted the trial outcome. As noted above, the jury found Darden not guilty of selling or intending to distribute cocaine. He was convicted only of possessing the cocaine found in his vehicle. Given the jury's relatively favorable verdict, as well as the clear evidence of cocaine in the car, we find it highly unlikely that Parker's response to defense counsel's question prejudiced Darden. See *Whitaker v. State*, 291 Ga. 139, 142 (2) (728 SE2d 209) (2012) (trial counsel's failure to object to comments on defendant's pre-arrest silence did not constitute ineffective assistance where defendant failed to show that comments likely impacted verdict); *Hines v. State*, 277 Ga. App. 404, 408 (2) (626 SE2d 601) (2006) ("Improper reference to a defendant's silence does not automatically require reversal or mandate a finding of ineffective assistance of counsel.") (punctuation omitted); see also *McGlothlin v. State*, 339 Ga. App. 371, 374 (2) (a) (791 SE2d 645) (2016) (verdict of acquittal on most serious charge undermined argument that detective's improper testimony prejudiced jury against defendant).

*Judgment affirmed. Ellington, P. J., and Rickman, J., concur*.